## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**DEMETRIUS S. RANKIN   # 03266-043**                          **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 5:11cv138- DCB-RHW**

**BRUCE PEARSON, *et al.***                                **DEFENDANTS**

### REPORT AND RECOMMENDATION

Before the Court is [25] Defendant's March 8, 2012 motion to dismiss or alternatively for summary judgment in this *pro se* prisoner's *Bivens*[1] lawsuit.  Plaintiff requested and was granted an extension of time to file his response to the motion (see Docket Entry [28] and text order of April 3, 2012), but instead he filed on April 19, 2012 [33] a motion to continue the summary judgment motion pursuant to Rule 56, and [34] an affidavit in which he challenges the evidence submitted in support of Defendants' motion.  The undersigned will address both these motions in this report.

### Facts and Procedural History

Demetrius S. Rankin is a federal inmate currently serving a 143-month sentence imposed September 17, 2007 upon his conviction from the United States District Court for the Southern District of Mississippi for possession with intent to distribute a controlled substance.  Rankin's projected release date is November 20, 2016.  [25-1]  The Bureau of Prisons inmate locator indicates Rankin is presently incarcerated in Oklahoma City. While he was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi [FCC Yazoo], Rankin filed this lawsuit on September 13, 2011, alleging violation of his constitutional rights by prison officials there.

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Rankin's complaint consists primarily of conclusory allegations against the Defendants collectively rather than specific allegations against particular individuals. He complains in his original complaint of events occurring from August 2009 through December 2009, and from April 2010 through November 2010, which he alleges show that Defendants conspired to punish him and engaged in retaliatory actions against him for exercising his right to free speech in filing administrative remedy complaints against Defendants and other Federal Bureau of Prisons (BOP) employees. [1, ¶¶ 2-5] Rankin complains prison officials filed disciplinary charges against him for violation of prison rules, and improperly opened his legal mail.

## Disciplinary proceedings re: November 18, 2009 Incident Report

In Count I, Rankin alleges that retaliatory actions by Defendants Charles Smith, Jennifer Boone and Armand LaRochelle led to Rankin's being transferred on November 18, 2009 from general population in the Camp Facility to the Special Housing Unit (SHU) where he was locked down 23 hours a day. Rankin claims Smith, Boone and LaRochelle initiated charges against him on November 18, 2009, in retaliation for his (Rankin's) verbally complaining to Warden Pearson on November 16, 2009 that they had refused to give him a lower bunk placement. He states that after he was transferred to SHU, he filed a complaint against Smith, LaRochelle and Boone on November 22, 2009 protesting the officers' filing the charges against him. [1, Count I, ¶ 8A, B, C] Rankin does not further identify his alleged November 22 complaint, and does not state whether he pursued that remedy to conclusion in the administrative process.

Rankin complains that in the disciplinary hearing on the November 18 charges which was conducted by Defendants Smith and Willette Smithers on November 23, 2009, he was denied due process, *i.e.*, the right to present documentary evidence and written statements from witnesses, and that he was not provided a written statement of the evidence relied upon for the

sanctions imposed.  [1, Count I, ¶ 8D]  With respect to these events, Rankin alleges Warden

Bruce Pearson,[2] had the power and duty to restrain/prevent the other defendants from violating

Rankin's rights, and claims Pearson is liable for failing to do so.  [1, Count I, ¶¶ 6-7]

Rankin's prison records show that Corrections Counselor Jennifer Boone made Incident

Report (IR) 1945294 at 14:55 on November 18, 2009, charging Rankin with insolence toward

staff and conduct which disrupts or interferes with the security or orderly running of the

institution.  [25-8]  The report states that at approximately 2:30 that afternoon, Boone told

Rankin he needed to move back to his original cell.  Rankin followed Boone into the Unit Team

Office, yelling at her "that we were not going to play him like that and he was not moving even if

it was a direct order;" that "he could care less if he received an incident report..."  Rankin ignored

Boone's orders that he lower his voice, and continued to get louder and more irate.  When Case

Manager Armand LaRochelle came out of his cubicle to see what the yelling was about, Rankin

aggressively approached LaRochelle and began yelling at him.  LaRochelle told Rankin several

times to stop yelling and to leave the office until he got himself together.  Operations Lieutenant

Rogers was notified.  [25-8]  The record of this IR includes memoranda prepared the same day

by LaRochelle [25-8, p. 3] stating Rankin ignored orders that he stop yelling and leave the office,

and by Camp unit secretary Randa Nicholson [25-8, p. 4] describing Rankin's aggressive, irate

behavior, and his refusal to obey the officers' orders.  Boone and LaRochelle's declarations also

corroborate the IR.  [25-7] and [25-5]  Boone states she initiated the charges against Rankin

solely due to his conduct on that date; that she had been off work on November 16-17, 2009, and

was unaware Rankin had discussed with the Warden any issues of bunk assignment or alleged

misconduct on her part.  [25-7]

_____

[2]Pearson was Warden at FCC Yazoo City from January 2008 until his retirement in October 2011.  [25-6]

Lt. McCrany investigated the IR, concluded that Rankin committed the charged conduct, and forwarded the report to the Unit Discipline Committee (UDC) for disposition. [25-8, p. 5] Rankin stated to the UDC that he was not insolent, that Boone raised her voice first and that the report was not properly investigated by the Lieutenant. UDC hearing officers Charles Smith and W.L. Smithers heard the matter on November 23, 2009, found Rankin committed the charged infraction and sanctioned him to 60 days loss of phone and commissary privileges. [25-8, p. 6]

On April 13, 2010, Rankin filed administrative remedy #585196, appealing the UDC sanctions imposed on IR 1945294 at the November 23, 2009 hearing. [25-9, p. 93] The declaration of Joshua C. Billings, BOP Supervisory Attorney at the Consolidated Legal Center at FCC Yazoo [25-26, ¶ 7], and Rankin's prison records, establish that the Warden denied Administrative Remedy #585196 on May 3, 2010. [25-9, p. 93] Rankin's May 25, 2010 appeal to the Regional Director was rejected on June 9, 2010 because he attached too many continuation pages and not all pages of the form were legible. [25-9, p. 95] When he re-submitted his appeal on July 13, 2010, it was rejected as untimely.[3] [25-9, p. 100] His November 29, 2010 attempt to re-submit the appeal again met the same fate [25-9, p. 111], as did his December 22, 2010 appeal to the Office of General Counsel. The response from General Counsel states, "Your resubmission to the Region was untimely. You had 10 days from the date of the 1st rejection notice dated 6/9/2010 to return this appeal." [25-9, p. 115] Rankin did not claim retaliation during the disciplinary proceedings regarding the November 18, 2009 incident report.

### Disciplinary proceedings re: May 7, 2010 Incident Report

In Count II, Rankin complains generally that from April 2010 to November 2010 Warden Pearson, LaRochelle, Leroy Pitts, Arthur Truex, Frederick Griffin, Keith Everett, Micheal (*sic*)

---

[3]Even if Rankin's contention that he did not receive the June 9, 2010 rejection notice until June 30 were accepted, he still failed to re-submit the appeal within ten days of receiving the notice.

Morris, Lisa Chisolm-Reams, Anthony Chambers and B. Pittman conspired to punish him for exercising his free speech rights. Pearson's liability is again premised upon his supervisory position as Warden of FCC Yazoo [1, Count II, ¶ 4], and Rankin's complaint is again that he was transferred from the Camp facility to SHU, this time due to rules violation charges initiated against him May 7, 2010. Rankin claims Defendants Griffin, Truex, Chambers and Pitts lodged the May 7 charges in retaliation for Rankin's filing complaints of misconduct against Defendants and other BOP employees, and that he "personally informed Defendant Warden Bruce Pearson" that the May 7 charges filed against him were in retaliation for his complaints about prison staff "discrimination, threatening and intimidation, use of undue influence, making arbitrary job assignments and making a false statement to staff regarding [Rankin's] medical history." [1, Count II, ¶¶ 2-7B]

Rankin's conclusory allegations that Pitts, Truex and Chambers initiated disciplinary charges against him on May 7, 2010 are refuted by the respective declarations of these Defendants ([25-17], [25-22] and [25-23]), all of which state that none of them initiated, or directed anyone else to initiate disciplinary charges against Rankin. The uncontradicted declaration [25-13] of Correctional Counselor Frederick Griffin establishes that Griffin was the one who actually initiated the incident report Rankin received that day. Griffin saw Rankin sitting in the multipurpose room at the camp at approximately 9:15 that morning, when he should have been at his work detail. When Griffin questioned him about why he was in the unit, Rankin stated he had permission from his supervisor to be there. Griffin contacted the supervisor and was told Rankin did not have permission to be absent from work or in the unit. Griffin again asked Rankin who gave him permission and told him his supervisor indicated he had no permission. Instead of responding to Griffin's questions, Rankin began questioning Griffin about

a request for job change that he (Rankin) had previously submitted. When Griffin warned Rankin to watch his tone or risk receiving an IR for insolence in addition to one for lying to staff, Rankin replied that he could say whatever he wanted to say, whenever he wanted to say it. Griffin issued the IR charging Rankin with lying to him and being insolent toward him, and Rankin was placed in SHU pending investigation. Griffin's declaration states he issued the IR solely because of Rankin's behavior and for no other reason. [25-13]

On May 19, 2010, Defendants Morris and Everett conducted a disciplinary hearing on the IR issued by Griffin. Rankin again complains he was denied the right to present written statements and documentary evidence. [1, Count II, ¶ 7A-C] Rankin was found guilty of the charged conduct, and appealed in administrative remedy #59043. [25-16], [25-26, ¶ 8] Warden Pearson denied the appeal on June 23, 2010 [25-16, p. 6], but the Regional Director found procedural error and remanded the matter for rehearing on July 28, 2010. [25-16, p. 4] Rankin was unsuccessful in his attempted appeal to the Office of General Counsel because, as a result of the remand, the IR was still pending rehearing. [25-16, p. 2]

Lisa Chisolm-Reams and Phillip Jackson were the members of the UDC which conducted the rehearing on September 21, 2010. In their respective declarations, [25-19] and [25-20], each stated that in lieu of making a verbal statement, Rankin submitted a written statement at the hearing. Based on the reporting officer's report, the UDC again found Rankin committed the offense of lying to a staff member, and of unexcused absence from work, sanctioned him with loss of 90 days phone privileges, and advised Rankin of the decision.

Rankin's records show that his October 7, 2010 appeal of the rehearing decision was assigned remedy identification #612774-R1. According to Chisolm-Reams' declaration, the appeal was rejected October 27, 2010, resubmitted November 23, 2010 (#612774-R2) and again

rejected for attaching too many pages. On December 10, 2010, Rankin re-filed the appeal
(#612774-R3) claiming the IR of May 7, 2010 was issued as a form of retaliation. [26, ¶ 9], [25-
9, pp. 104, 109, 112], and [21]. On January 7, 2011, the Regional Director again remanded this
IR for rehearing, without addressing or making any findings regarding Rankin's newly raised
retaliation allegations. [25-19, ¶ 4], [25-21, p. 3], [26, ¶ 9] and [9, pp. 112, 120, 126] The
Regional response instructed Rankin to continue the administrative remedy process if not
satisfied with the response. Rankin filed an appeal with the Office of General Counsel on
February 9, 2011, which was rejected on February 15, 2011 for his failure to attach appropriate
documentation. He re-filed the appeal on March 7, 2011, but it was again rejected for failure to
attach appropriate documentation. Although Rankin was advised he could re-file the appeal
within fifteen days, he did not re-file this appeal. [25-26, ¶9], [25-9, p. 127]

    On the second remand from the Regional Director, Chisolm-Reams reviewed the IR of
May 7, 2010, and decided to expunge the report from Rankin's file because of the amount of
time that had elapsed since the IR was written, and the number of times it had been remanded
from the Regional Office. She states in her declaration that her decision was not based on the
merits of the IR or the strength of evidence against Rankin. [25-19, ¶ 5] In Paragraph13 of his
affidavit in support of motion to continue the summary judgment motion, Rankin challenges
Chisolm-Reams' declaration by claiming Defendant Pearson and non-parties Glenda Dykes and
Harrell Watts would testify that the May 7, 2010 incident report was expunged due to lack of
evidence, rather than to passage of time and number of remands. Rankin does not state how
Pearson, Dykes and Watts would know Chisolm-Reams' reasons better than she, nor does he
give any reason why he could not obtain affidavits from them. Rankin's December 2010

contention that the May IR was issued as a form of retaliation was never addressed during the disciplinary proceedings on the IR which was ultimately expunged after the second remand.

On October 26, 2010, Rankin filed administrative remedies #612446 and #612442. The former claimed the September 21, 2010 hearing had been delayed without sufficient cause. [25-26, ¶ 10], [25-9, p. 106] The Warden denied this remedy November 17, 2010. Rankin's appeal to the Regional Director on November 29, 2010, was rejected because he failed to attach required documentation. He re-filed the appeal December 21, 2010, indicating the disciplinary process at issue was the result of retaliation. The Regional Director responded, denying the appeal as repetitive of the issues Rankin had already raised in Remedy #612774-R3. [25-26, ¶10], [25-9, pp. 105, 109, 114], [25-27] Rankin did not appeal the Regional Director's denial of his appeal regarding remedy #612446.

### The Mail Opening Incident

In administrative remedy #612442, Rankin complained that his legal mail was opened outside his presence. He did not allege any retaliatory motive in the opening of the mail. The Warden responded for informational purposes only, and Rankin appealed to the Regional Director, who likewise provided a response for informational purposes only, indicating the Warden had appropriately addressed the matter. Rankin's appeal to the Office of General Counsel was rejected for failure to attach required documents, and when he resubmitted the appeal on February 22, 2011, the Office of General Counsel responded that there had been no violation of policy. [25-26, ¶11], [25-9, p. 106, 117, 121] and [25-28] In the proceedings on administrative remedy #612442, Rankin did not assert his mail was opened as a form of retaliation, as he claims in the present lawsuit. [25-28]

As injury from the alleged constitutional violations, Rankin claims he suffers manic depression, sleepless nights and oppression. He seeks compensatory and punitive damages, declaratory judgment holding null and void his re-classification and transfer from the Camp facility from out custody to in custody at a low facility, and restoration to the position he would have been in had the alleged unconstitutional acts not occurred. [1, pp. 10-11]

In [21] the amended complaint filed February 6, 2012, Rankin complains of two additional instances in which he was charged with violation of prison rules, and claims that each Defendant had the power and duty to restrain fellow Defendants from violating Plaintiff's rights, but failed to do so. Rankin alleges that on January 21, 2011, Defendants F. Troublefield and C. McGinty filed false disciplinary charges against him in retaliation for Rankin's having filed a grievance to Captain Debra D. Dawson against Troublefield and other prison officials on December 29, 2010. No such charges appear in Rankin's inmate discipline history as of February 15, 2012 [25-4], however his administrative remedy history through February 21, 2012 contains a January 24, 2011 remedy #619161-R1 complaining that staff do not properly conduct 10-minute moves. That remedy was denied and closed, and there is no further mention of it in Rankin's administrative remedy history. [25-9, p. 118]

Rankin also alleges that on February 19, 2011, Defendants B. Pittman, C. Williamson, T. Allen, Keith Everett and Lisa Chisolm-Reams "filed and approved false and unjustified disciplinary charges against Plaintiff in retaliation for his having successfully pursued administrative complaints, *i.e.*, his successful appeal "under remedy ID# 612774-R3 which was ordered reheard and expunged ... and two related grievances under remedy ID# 612446-F1 and 612452-F1."[4] Rankin's inmate discipline history indicates that on February 19, 2011 Rankin was

_____

[4]Rankin's records do not indicate that either of the latter remedies was exhausted. [25-9]

issued incident report 2127448 for being insolent to a staff member. [25-4]  Benjie Pittman, Deputy Case Management Coordinator at FCC Yazoo issued IR #2127448 for interfering with staff in the performance of duties on February 19, 2011.  At approximately 8:30 a.m., while Pittman was conducting rounds in Housing Unit One, Rankin began walking behind her, and followed her around for some five minutes complaining in a loud and aggressive manner about the lights being on in the unit so early on a weekend, telling Pittman she should turn them off; that she did not know the rules and was going to get in trouble for turning lights on before 9:00 a.m.  [25-25]  Pittman's declaration states she issued the IR solely due to Rankin's behavior toward her.  The investigator on this IR, T. Allen, concluded the IR did not have enough evidence to support the original charge of interfering with staff in the performance of duties.

At the UDC hearing chaired by Reams on February 25, 2011, Rankin stated he was "informing [Pittman] that the lights normally do not come on until 9:00 on the weekends and holidays..." [25-25, p. 4]  The affidavits of Rankin's hearing witnesses state that several inmates told Pittman the lights did not usually come on until 9:30 a.m., and one of the other inmates went to report the matter to Counselor Williamson.  The UDC found Rankin guilty of insolence toward staff and sanctioned him 30 days loss of commissary privileges.  [25-4, p. 2], [25-24] [25-24]  His administrative remedy history of this disciplinary hearing shows Rankin filed the following administrative remedies regarding this incident report:  #628675-F1 field March 2, 2011 and denied March 23, 2011 [25-9, p. 124];  #628675-R1 and # 628679-R1 filed April 12, 2011 and both denied May 27, 2011 [25-9, p. 129]; #628675-A1 filed June 14, 2011, and rejected June 29, 2011 [25-9, p. 131]; #628675-A1 filed June 14, 2011 and denied December 22, 2011 [25-9, p. 131]; and #628679-A2 filed August 5, 2011 and denied December 15, 2011.  [25-9, p. 132]  Rankin claims he personally informed Warden Pearson that these defendants had

filed/approved false and unjustified disciplinary charges in retaliation for his having engaged in constitutionally protected activity.  [21, pp. 3-4]  According to Rankin the disciplinary charges filed by these defendants resulted in his being denied a transfer back to the Camp facility.  In addition to compensatory and punitive damages, Plaintiff requested injunctive relief prohibiting future retaliatory actions by Defendants.

## STANDARD

Because Defendants have submitted matters outside the pleadings with their motion to dismiss or alternatively for summary judgment, the motion will be considered as one for summary judgment.  *See* FED.R.CIV.P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).  The Court must view the facts in a light most favorable to the Plaintiff, and may grant summary judgment only if Defendants demonstrate that there is no genuine issue of material fact and they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  The Court must deny summary judgment if Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985)(whether an issue of material fact exists is a question of law for the Court to decide, drawing inferences "most favorable to the party opposing the motion,  and [taking] care that no party will be improperly deprived of a trial of disputed factual issues.")

## ANALYSIS

Plaintiff filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. § 1331.  A *Bivens* action is analogous to a civil rights action brought under 28 U.S.C. § 1983, the only difference being that *Bivens* applies to alleged constitutional violations by federal actors, rather than state officials.  *See Izen v. Catalina*, 398 F.3d 363, 367, n.3 (5th Cir. 2005).  "*Bivens* extends the protections afforded by § 1983 to parties injured by federal actors."  *Muzzi v. U.S. Government*, 2002 WL

922378 at *1 (E.D. La. May 6, 2002). Defendants' motion seeks dismissal or summary judgment on Rankin's lawsuit on a number of grounds including failure to exhaust administrative remedies; qualified immunity; absolute immunity as to Dr. Chambers; lack of supervisory liability under *Bivens*; and failure to state a First Amendment or conspiracy claim.

Supervisory Liability

Rankin's allegations that Warden Pearson "had the power and duty to restrain the other Defendants and prevent them from violating the rights of the plaintiff," are clearly claims of supervisory liability. However, *respondeat superior* liability is not cognizable under *Bivens*. To be held liable in a *Bivens* action, supervisory officials must either be personally involved in the alleged deprivation of a constitutional right, or must have implemented a policy "so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Rankin asserts in Paragraphs 14-21 of his affidavit in support of his motion for continuance of the dispositive motion, that further discovery will allow him to find evidence that Defendants Pearson, Pitts and Truex were personally involved in the constitutional violations he claims: Pearson because Rankin verbally complained to him November 16, 2009, and again on November 19, 2009 about not being given a lower bunk, and because Plaintiff "reported Pitts in remedy #589592, regarding [Pitts] involvement in the May 7, 2010 disciplinary action;"[5] Pitts because he and Truex ordered that Plaintiff be taken to SHU after the May 7, 2010 incident, and because Pitts denied Rankin's October 26, 2010 remedy # 612452-F1, in which Rankin claimed staff were "in cahoots/violating policy during UDC hearing" [25-9, p. 107]; and Truex because he had to be aware that Plaintiff had filed a complaint against him while he was

---

[5]According to Rankin's administrative remedy history, remedy # 589592 involved a claim of discrimination by a counselor on job assignment. [25-9, p. 94]

acting as Camp Administrator.[6]  Plaintiff, a self-professed "former legal assistant" [21-1, ¶ 1], is well aware that grievances must be presented in writing in compliance with BOP regulations, and must be prosecuted to completion of the administrative process.  Furthermore, the mere fact that Rankin had complained about acts of various officers in the past does not infuse their every act thereafter with retaliatory motive.  Administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and temporary detention in SHU pending investigation of incident reports is *de minimus* and, alone, will not support a claim of retaliation.  Because Plaintiff has failed to establish a factual basis upon which liability may be imposed on Warden Pearson, Associate Warden Leroy Pitts and Acting Executive Assistant/Camp Administrator Arthur Truex, the undersigned recommends that Plaintiff's claims against these Defendants be dismissed.

Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA) an inmate must exhaust administrative remedies, and cannot bring unexhausted claims in court.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). A prisoner cannot satisfy the exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary."  *Woodford*, 548 U.S. at 83-84.  The PLRA requires that the prisoner "not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules."  *Lane v. Harris Cty. Med. Dep't.*, 2008 WL 116333 (5th Cir. Jan. 11, 2008).  "Exceptions to the exhaustion requirement apply only in

---

[6]Truex served as Acting Executive Assistant/Camp Administrator from February 2010 to May 2010.  [25-22, p. 2]

'extraordinary circumstances,'" and the prisoner must demonstrate futility or unavailability of administrative review. *Schipke v. Van Buren*, 239 Fed.Appx. 85, 86 (5th Cir. 2007).

The BOP Administrative Remedy Program requires that an inmate first present his complaint and seek informal resolution within 20 days of the incident giving rise to the complaint. If that proves unsatisfactory, the inmate must then file a written administrative remedy request with the Warden of the facility where he is confined. An inmate dissatisfied with the Warden's response (or lack of response) has 20 days to file an appeal to the Regional Director, and an inmate dissatisfied with the Regional Director's response (or lack of response) has 30 days to appeal to the General Counsel. Appeal to the General Counsel is the final administrative appeal and completes the administrative process. 28 C.F.R. § 542.10, *et seq.* Failure to exhaust is an affirmative defense on which the Defendant bears the burden of proof. In support of the argument that Rankin failed to exhaust administrative remedies as to some of his claims, Defendants present the Declaration of Joshua C. Billings, Supervisory Attorney at Consolidated Legal Center located at FCC Yazoo [25-26], Rankin's BOP Administrative Remedy record through February 21, 2012 [25-9], and specific administrative remedy packets for remedies #593043 [25-16], #612774 [25-21], #612446-R2 [25-27] and #612442 [25-28]. This evidence shows Rankin failed to exhaust administrative remedies with respect to his claims that retaliation was the moving force with respect to the disciplinary proceedings on the incident report of November 18, 2009 or the mail opening incident. Discovery will not change Rankin's official records. While Defendants concede Rankin exhausted remedy # 593043 regarding the incident report of May 7, 2010, this remedy addressed the UDC hearing by Morris and Everett and Rankin did not allege during that remedy process that these Defendants retaliated against him or that the IR or UDC hearing resulted from retaliation. [25-26, ¶8], [25-16]

## Due Process

Rankin's due process claims in the disciplinary proceedings fail for lack of a constitutionally protected liberty interest. Such interests are "generally limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Rankin's complaints do not involve such atypical or significant hardship as they involved sanctions to which due process protections have been held inapplicable, such as loss of commissary and telephone privileges, cell restrictions, reclassification, reassignment, and administrative segregation. *See Madison v. Parker*, 104 F.3d 765, 767-768 (5th Cir. 1997); *King v. Sims*, 2009 WL 2497154, *5 (S.D. Miss. August 14, 2009; *Sharp v. Anderson*, 2000 WL 960568, *1 (5th Cir. 2000); and *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996).

## Retaliation

Rankin claims Defendants retaliated against him by filing incident reports subjecting him to disciplinary action because he had complained about some of the Defendants or other BOP employees. Prison officials may not retaliate against a prisoner for exercising his First Amendment right to access to the courts or to complain through proper channels about an official's misconduct through the grievance process. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006), citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). The wide latitude prison officials have in controlling and disciplining inmates "does not encompass conduct that infringes on an inmate's substantive constitutional rights." *Woods,* 60 F.3d at 1166, citing *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

The elements of a prisoner's retaliation claim are: (1) the invocation of a specific constitutional right; (2) the prison officials' intent to retaliate against the prisoner for the exercise

of that right; (3) a retaliatory adverse act; and (4) causation, *i.e.*, that but for the retaliatory motive the incident complained of would not have occurred. *Clarke v. Stalder*, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998); *Hines v. Graham*, 320 F.Supp.2d 511, 521 (N.D. Tex. 2004). Rankin had the burden to show, by more than conclusory allegations or personal belief, that he was retaliated against, that Defendants possessed a retaliatory motive – he was required to produce direct evidence of motivation or to allege a chronology of events from which retaliation may be plausibly inferred. *Id.; Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). As the Court stated in *Shaheen v. McIntyre*, 2007 WL 3274835, *8 (N.D. N.Y. 2007):

> To prevail on a First Amendment claim of retaliation under 42 U.S .C. § 1983, a plaintiff must prove by a preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff-namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a *causal connection* between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. (footnotes omitted)

The mere fact that a prisoner who has complained about a prison employee is thereafter disciplined for violating prison rules is insufficient to establish the causation element of a retaliation claim. *See Reese v. Skinner*, 322 F.Appx. 381, 2009 WL 1066997 (5th Cir. 2009)(prisoner's allegation that "harassment of him intensified after he started filing grievances" was insufficient allegation of causation as "temporal proximity alone is insufficient to prove but for causation.") (citations omitted). The *Woods* court cautioned trial courts dealing with prisoner retaliation claims:

> To assure that prisoners do not inappropriately insulate themselves from
> disciplinary actions by drawing the shield of retaliation around them, trial courts
> must carefully scrutinize these claims. To state a claim of retaliation an inmate
> must allege the violation of a specific constitutional right and be prepared to
> establish that but for the retaliatory motive the complained of incident - such as
> the filing of disciplinary reports... would not have occurred. This places a
> significant burden on the inmate. Mere conclusory allegations of retaliation
> will not withstand a summary judgment challenge. The inmate must produce
> direct evidence of motivation or, the more probable scenario, "allege a chronology
> of events from which retaliation may be plausible be inferred."

*Id.* (footnotes and citations omitted). Rankin cannot establish that "but for the retaliatory

motive" he would not have been issued the incident reports of November 18, 2009, May 7, 2010

and February 19, 2011. The Boone, Griffin and Pittman declarations plainly state they issued the

respective incident reports because of Rankin's behavior and for no other reason. Even if Rankin

were able to clear the retaliatory motive hurdle, his claims would still fail, as the adverse acts

which he alleges - loss of commissary and phone privileges as a result of disciplinary actions,

opening of his legal mail and cell searches have been held insufficient to meet the adverse act

requirement of a retaliation claim. *See e.g.*, *Johnson v. Kelly*, 2007 WL 1849001, *11 (S.D. Tex.

2007)(temporary loss of commissary privileges was a *de minimus* act for retaliation evaluation);

*Montgomery v. Ray*, 2003 WL 22238980, *4 (E.D. Pa. 2003)(limitation on phone calls was not a

sufficiently adverse act for retaliation evaluation); *Morgan v. Montanye*, 516 F.2d 1367 (2nd Cir.

1975)(isolated incident of opening legal mail will not set out a claim of constitutional

dimensions); *Shaheen v. McIntyre*, 2007 WL 3274835 (N.D. N.Y. 2007)(allegations of repetitive

searches of prison cell did not appear to be an adverse action). To state a viable retaliation claim

the act must be "capable of deterring a person of ordinary firmness from further exercising his

constitutional rights." *Morris*, 449 F.3d at 686.

<u>Conspiracy</u>

Rankin has presented nothing more than conclusory allegations of a conspiracy between the Defendants to retaliate against him. To allege a conspiracy to deprive one of his constitutional rights a Plaintiff must allege "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person ... of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person ... or deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994). One asserting a conspiracy under the civil rights statutes must plead the "operative facts" showing an illegal agreement; "bald allegations" of an agreement will not suffice. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-1370 (5th Cir. 1987). Rankin's conspiracy claim fails due to his failure to plead such operative facts.

<u>Absolute Immunity</u>

Dr. Anthony Chambers, the Clinical Director for the Health Services Department at FCC Yazoo, has been an officer in the Public Health Service since September 21, 1997. [25-23] In *Hui v. Casteneda*, 130 S.Ct. 1845 (2010), the United States Supreme Court held the provisions of 42 U.S.C. § 233(a) preclude a *Bivens* action against a Public Health Service officer for harm arising out of Constitutional violations committed while acting within the scope of his office or employment. *Id.*, at 1850-51. Dr. Chambers had no involvement in initiating any disciplinary charges against Rankin, and any acts by Dr. Chambers in providing information to Rankin's Unit Team regarding any medical restrictions Rankin had were acts done in the course and scope of the doctor's duties as a Public Health Services officer. Under the above authority, Dr. Chambers is entitled to absolute immunity from a *Bivens* claim. There are no factual allegations in the

complaint as to the nature of Rankin's complaint against Dr. Chambers, but in paragraphs 22-24

of his affidavit in support of motion for continuance, Rankin alleges he had a history of

restrictions which precluded his assignment to certain work details, and he appears to be claiming

Dr. Chambers gave other prison officials erroneous information as to those restrictions.  The

issue of immunity is a question of law for the Court dependent upon Dr. Chambers status as a

public health officer and the statute which provides him immunity.  Rankin has failed to show

how any discovery will likely create a genuine issue of material fact as to Dr. Chambers.  Under

the above authority, Dr. Chambers is entitled to absolute immunity from a *Bivens* claim, and

should be dismissed from this case.

## Qualified Immunity

"Government officials performing discretionary functions generally are shielded from

liability for civil damages" so long as their conduct does not violate "clearly established statutory

or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 524-526 (1985).  The defense is

available in any suit for damages for alleged violations of the Constitution.  When an official

pleads qualified immunity, the burden shifts to the plaintiff to rebut the qualified immunity

defense by establishing the violation of clearly established law.  *Pierce v. Smith*, 117 F.3d 866,

871-872 (5th Cir. 1997)  To determine whether Defendants are entitled to qualified immunity, the

Court must consider (1) whether the official's conduct violated a constitutional right, and (2)

whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the

official's conduct did not violate a constitutional right, the inquiry ends there.  "On the other

hand, if a violation could be made out on a favorable view of the parties' submissions, the next,

sequential step is to ask whether the right was clearly established." *Id*. Officials are immune

from claims for damages "as long as their actions could reasonably have been thought consistent

with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638

(1987). The question is whether reasonable officers could have thought the Defendants' conduct

permissible under the Constitution. *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

Rankin claims since he had complained of the conduct of BOP employees at FCC Yazoo,

the institution of disciplinary proceedings against him for violating prison rules constituted

retaliation, in violation of his First Amendment rights. While an inmate retains those First

Amendment rights which are not inconsistent with his status as a prisoner (*Pell v. Procunier*, 417

U.S. 817, 822 (1974)), he must "establish that he exercised that right in a *manner* consistent with

his status as a prisoner." *Freeman v. Texas Dept. Of Criminal Justice*, 369 F.3d 854, 864 (5th

Cir. 2004). "Prison officials may legitimately punish inmates who verbally confront institutional

authority without running afoul of the First Amendment." *Id*.; *see also Orebaugh v. Caspari*,

910 F.2d 526, 528 (8th Cir. 1990)(prisoner cannot state a claim of retaliation by alleging

retaliation arose from discipline imposed for acts he was not entitled to perform). Rankin had no

right to flaunt prison rules. All Defendants deny any retaliatory motive in their actions regarding

Rankin; those who filed disciplinary charges state they did so solely because of Rankin's

conduct. Once Defendants raise qualified immunity, the Plaintiff has the burden of disproving

Defendants' entitlement to the defense. *Pierce*, 117 F.3d at 872. The undersigned is of the

opinion that Rankin has not met that burden.

Motion for continuance to conduct discovery

When Defendants filed their motion for summary judgment, they provided Rankin some

293 pages of exhibits consisting of: 15 declarations which include declarations of every

defendant named in [1] the complaint; Rankin's inmate public information inmate data, admissions/release institution assignment history, quarters history, discipline history, and administrative remedy history; existing incident reports regarding the disciplinary charges of which Rankin complains and specific administrative remedy packets regarding his complaints; a request for management variable to allow him to remain at his minimum security level facility despite disciplinary charges; and a request to transfer him to low security at FCC Yazoo following additional misconduct.

Rankin's belief that "time for discovery will uncover defenses likely to create triable issues of fact" which might result in denial of Defendants' motions [34, ¶ 3] is insufficient to warrant continuance of the summary judgment motion. One seeking relief under Rule 56(d), FED.R.CIV.P., must provide by affidavit the "*specified* reasons [he] cannot present facts essential to justify [his] opposition to [a summary judgment motion]," *i.e.*, a specific statement as to why he needs discovery, and how the discovery will likely create a genuine issue of material fact. *King v. Freedom Life Ins. Co.*, 2011 WL 3876979, *3 (S.D. Miss. September 1, 2011). "[V]ague assertions that additional discovery will produce needed, but unspecified facts" will not suffice. *Gulf Restoration Network v. Hancock County Develop., LLC*, 2011 WL 482520, *1 (S.D. Miss. February 3, 2011). It was Rankin's burden to "demonstrate a particular need for additional discovery and that the discovery will create a genuine issue of material fact." *Id.* Conclusory allegations lacking supporting evidence, legal argument, self-serving statements without factual support in the record, inferences or opinions not "grounded in observation or other first-hand experience," and mere speculation or conjecture are not properly included in a Rule 56(d) affidavit, and may be disregarded in determining whether the motion should be granted. *Hogue*

*v. City of Fort Wayne*, 599 F.Supp.2d 1009, 1016 (N.D. Ind. 2009). The above authority leads the undersigned to conclude that Rankin's motion [33] should be denied.

<u>RECOMMENDATION</u>

Based upon the foregoing, the undersigned recommends that Rankin's motion for continuance be denied, and that Defendants' motion for summary judgment be granted and Rankin's claims against all defendants be dismissed: the supervisory liability claims against Bruce Pearson, Arthur Truex and Leroy Pitts for failure to state a cognizable *Bivens* claim; the claim against Dr. Anthony Chambers on grounds of absolute statutory immunity; the conspiracy claim for failure to plead operative facts; all Count I claims (against Charles Smith, Jennifer Boone, Armand LaRochelle, Willette Smithers and Warden Pearson) regarding the disciplinary charges of November 18, 2009, for failure to exhaust administrative remedies; all due process claims regarding the disciplinary proceedings on the incident reports of November 18, 2009, May 7, 2010, and February 19, 2011, for lack of a constitutionally protected liberty interest; all claims of retaliation (against Warden Pearson, LaRochelle, Pitts, Truex, Frederick Griffin, Keith Everett, Micheal Morris, Lisa Chisolm-Reams, Anthony Chambers and B. Pittman) in Count II regarding the incident report of May 7, 2010 and the complaint that his legal mail was opened, for failure to exhaust any administrative remedy asserting retaliation; and all claims of retaliation, including those involving opening of legal mail and improper cell searches, for failure to exhaust, and for lack of a legally sufficient retaliatory adverse act. In the alternative, the undersigned recommends dismissal of the case on grounds of qualified immunity for all Defendants.

The undersigned further recommends that Plaintiff's claims against unserved defendants T. Allen, C. Williamson, C. McGinty and F. Troublefield, which are set out in Plaintiff's

February 6, 2012 amended complaint be dismissed without prejudice.  Contemporaneously with the filing of this Report and Recommendation, the undersigned is filing an order denying Plaintiff's motion [36] for appointment of the U.S. Marshal to serve the amended complaint for the reasons set forth in that order.

## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file written objections to the Report and Recommendation.  A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge.  Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge he does not intend to respond.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 7th day of December, 2012.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE