**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**DEMETRIUS S. RANKIN # 03266-043**                              **PLAINTIFF**

**VERSUS**                                **CIVIL ACTION NO. 5:11cv138-DCB-RHW**

**BRUCE PEARSON, et al.**                                        **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

     Before the Court is Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [**docket no. 25**] and pro se Plaintiff's Motion to Continue Summary Judgment Motion pursuant to 56(d) [**docket no. 33**]. After construing the Defendants' dispositive Motion [docket no. 25] as one for summary judgment, Magistrate Judge Walker issued and Report and Recommendation [**docket no. 52**] on December 7, 2012, wherein he recommends that the Plaintiff's claims be dismissed. The Plaintiff timely filed his objections on March 3, 2013 [docket no. 60]. Having carefully considered the Report and Recommendation and the Plaintiff's objections thereto, the Court finds that the Plaintiff's objections are overruled and will dismiss his claims.

**I. BACKGROUND**

     The Plaintiff, who is an inmate at the Federal Correctional Complex in Yazoo City, Mississippi, alleges that the seventeen named Defendants, who are employees at that same facility, either individually or as a part of a conspiracy deprived him of his constitutional rights. Specifically, he alleges that the Defendants engaged in a campaign of retaliation against him in violation of

his First Amendment "right to free speech and redress of grievances" and seeks compensatory and punitive damages against the Defendants in their individual capacities under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). The Plaintiff also lodges "due process" and "conspiracy" allegations against the Defendants, which arise out of the same incidents as his retaliation claims. The Plaintiff's factual allegations stem from at least four separate incidents. Two of the incidents, occurring on November 18, 2009, and May 7, 2010, were raised in the original Complaint, and are the impetus of the present suit. <u>See</u> Complaint, docket no. 1. The final two incidents, one allegedly occurring on January 21, 2011, and the other on February 19, 2011, were included in the Amended Complaint. <u>See</u> Am. Compl., docket no. 21.

After reviewing the Defendants' Motion, Magistrate Judge Walker recommended that this Court dismiss: (1) all claims against Defendants Pearson, Truex, and Pitts because respondeat superior liability is not available under <u>Bivens</u>; (2) all claims against Dr. Chambers because he is entitled to absolute immunity; (3) all conspiracy claims for failure to plead operative facts; (4) all claims arising from the November 18, 2009 incident for failure to exhaust administrative remedies; (5) all due process claims regarding the November 18, 2009, May 7, 2010, and February 19, 2011 incidents for lack of a constitutionally protected liberty

2

interest; (6) all claims of retaliation against Defendants Pearson, LaRochelle, Pitts, Truex, Griffin, Everett, Morris, Chisolm-Reams, Chambers, and Pitman regarding the May 7, 2010 incident for failure to exhaust any administrative remedy asserting retaliation; (7) all claims of retaliation for failure to exhaust and for lack of a legally sufficient retaliatory adverse act. See R & R at 22, docket no. 52. Additionally, he recommended that all claims be dismissed on the ground that the Defendants are entitled to qualified immunity. Finally, he recommended that the Plaintiff's claims against unserved Defendants Allen, Williamson, McGinty, and Troublefield—claims that arise out of the Amended Complaint—be dismissed without prejudice. See id. at 22-23.

## II. OBJECTIONS TO THE REPORT AND RECOMMENDATION

In a thorough fifty-four-page brief, the Plaintiff objects to most of these recommendations. First, he dedicates the first twenty pages to the issue of exhaustion. Objections at 2-20, docket no. 20. Next, he devotes some fifteen pages to disputing Magistrate Judge Walker's findings with regard to his retaliation claims, and more specifically, whether he has alleged facts to support but-for causation. Id. at 20-35. Third, he advances a variety of legal arguments regarding his due process claims and supervisor liability. Id. at 35-46. Finally, the Plaintiff concludes by disputing Magistrate Judge Walker's findings with regard to qualified immunity, civil conspiracy, and absolute immunity. The

3

Court will rule on the Plaintiff's objections in the order that he has presented them.

## III. ANALYSIS

### A. Exhaustion

*1. November 18, 2009 Incident*

Magistrate Judge Walker found that the Plaintiff failed to timely exhaust his administrative remedies related to the November 18, 2009 event. The Plaintiff argues that his failure to timely appeal was caused by the late delivery of the June 9, 2010 rejection notice from the Southeast Regional Office. See Objections at 4, 6, 7. Having reviewed the record, the Court agrees with the Report and Recommendation that, regardless of whether the rejection notice was received on June 30, 2010, or whether the Plaintiff mailed his appeal on July 2, 2010, see id. at 4, the Plaintiff failed to exhaust because the resubmission of his appeal was *received* by the Regional Office on June 13, 2010—more than ten days after his receipt of the notice. See Billings Decl. ¶ 4, 7;[1] R & R at 4. Therefore, the Plaintiff's objection to dismissal of all claims arising from the November 18, 2009 incident for failure to exhaust administrative remedies is denied.

*2. The May 7, 2010 and "Legal Mail" Incidents*

As for the May 7, 2010 incident, Judge Walker found that the

---

[1] The Plaintiff's attack on the Billings Declaration is without merit. The Court notes that the Plaintiff's administrative record also indicates that his appeal was untimely.

4

Plaintiff failed to exhaust his administrative remedies because he failed to allege that retaliation was the "moving force" behind the incident. See R & R at 14. This conclusion was based upon the fact that the Plaintiff failed to exhaust Remedy ID # 593043. The Plaintiff argues that he did in fact file a grievance alleging retaliation in connection with this event and states that his grievance was assigned Remedy ID # 612467, which ultimately was deemed repetitive of Remedy ID # 593043.

Having carefully reviewed the record in light of the Plaintiffs allegations, the Court agrees that the Plaintiff did allege—albeit not very clearly—in Remedy ID # 612467 that "retaliation" was a moving force behind the "Respondents" actions related to the May 7, 2010 incident. Moreover, the Plaintiff did exhaust this remedy. See docket no. 60-1 at 21-26. But the Plaintiff never mentioned what adverse act he suffered, other than to suggest that he suffered some harm because the "Respondents" had filed a false incident report against him. Further, the underlying Incident Report, assigned # 2012565, was expunged from the Plaintiff's record. Griffin Decl. ¶ 5, docket no. 25-13. Therefore, the Plaintiff did not suffer any adverse act as a result of the May 7, 2010 incident, at least one that was administered as an official response to his behavior.

The Court acknowledges that one of the Plaintiff's allegations is that he was temporarily housed in a Special Housing Unit ("SHU")

5

pending his investigation of the May 7, 2010 incident. But he never raised this specific act in any administrative grievance related to the May 7, 2010 incident. Nor, for that matter, did the Plaintiff name in Remedy ID # 612467 any of the now-named Defendants, other than by reference to the previous administrative grievances filed against them related to the alleged falsity of Incident Report # 2012565. Given that the Plaintiff never raised his temporary time spent in the SHU in an administrative grievance, and given that he tied his allegation in Remedy ID # 612467 to Incident Report # 2012565, which was expunged, the Court finds that (1) either he did not exhaust his administrative remedies with respect to his temporary housing in the SHU or (2) his exhausted claims are now moot because the Defendants imposed no official adverse act related to Incident Report # 2012565. Either way, the Plaintiff's objection that he has an unexhausted claim before the Court related to the May 7, 2010 is denied.[2]

---

[2] While this finding may seem harsh or hyper-technical, the Court undertakes this analysis keeping in mind whether the Plaintiff's grievance put the BOP investigative officials on notice of his complaints, thereby giving them the opportunity to investigate their validity. Viewed in this light, the Plaintiff's administrative grievances are chock-full of allegations of "retaliation" but do not establish and do not even attempt to establish a plausible chronology of *events* from which the BOP officials could infer retaliation. In short, the Plaintiff produces no facts to give the prison officials something to go on. The closest the Plaintiff comes to alleging a retaliation claim is with Griffin, see discussion infra, but even this allegation was difficult to understand and required reliance on the Plaintiff's Complaint and objections.

As for the mail incident, Magistrate Judge Walker found that the Plaintiff's complaint in Remedy ID # 612442, which was exhausted, did not allege retaliation and therefore the Plaintiff could not bring his claim on this ground. The Plaintiff failed to object to this finding, and in any case, having reviewed the record, this Court agrees with it. See Ex. 28, docket no. 25-28. Therefore, all claims asserting retaliation against the Defendants for opening his "legal mail" are dismissed for failure to exhaust.

*3. The January 21, 2011 and February 19, 2011 Incidents*

Finally, Magistrate Judge Walker recommended dismissal of the January 21, 2011 and February 19, 2011 incidents because the Plaintiff failed to receive the Court's permission to file the Amended Complaint. See R & R at 22-23. Additionally, he found that the Plaintiff had failed to exhaust his administrative remedies for these two incidents because—at that time—the Plaintiff had not produced any evidence to indicate that he had done so. Now, the Plaintiff opposes dismissal of these claims. His explanation for not initially bringing these claims is a novel one. He states that the claims brought in his Amended Complaint—claims that are predicated on events which took place before he filed his original Complaint—had not been exhausted at the time he filed his original Complaint, and therefore those claims would have been immediately dismissed. According to the Plaintiff, his claim of retaliation regarding the January 21, 2011 incident was not exhausted until

7

December 15, 2011, and his claim of retaliation regarding the February 19, 2011 incident was exhausted on December 22, 2011. In other words, the Plaintiff admits that he did not exhaust these claims before filing the present suit but considers this a valid excuse for waiting to file his Amended Complaint.

Taking these allegations as true, the Court agrees with the recommendation that the claims related to these incidents against the unserved Defendants should be dismissed without prejudice. The Court adds, however, that to the extent that the Amended Complaint alleges claims against the served Defendants, those allegations are also dismissed without prejudice. The Court agrees with reasoning set forth in the Report and Recommendation, which incorporated a contemporaneous Order [docket no. 51] denying the Plaintiff's Motion to Serve the additional Defendants. Additionally, there is ample authority to suggest that the Plaintiff *must* exhaust his administrative remedies *before* filing the initial Complaint.[3]

---

[3] Even if the Court could allow the Plaintiff to proceed with these claims, there appears to be little reason why he should be allowed to amend his Complaint in these circumstances. Other than the allegations being similar in theory, there is nothing to link the former incidents with the latter. The latter alleged adverse acts occurred at different times and involve mostly different Defendants. Further, there is nothing to suggest to this Court, except for the possibility of these claims being now dismissed with prejudice, why the Plaintiff could not bring retaliation claims related to these events in a separate suit. While there has been minimal briefing on the merits of these claims, neither the Report and Recommendation nor the Defendants suggest that the claims should be dismissed with prejudice (as to refiling in forma pauperis) for failure to exhaust. See Gillet, 577 F. Supp. 2d at 832.

Wendell v. Asher, 162 F.3d 887, 890-91 (5th Cir. 1998), overruled by implication on other grounds by Jones v. Bock, 549 U.S. 199, 199, (2007); Gillet v. Anderson, 577 F. Supp. 2d 828, 832 (W.D. La. 2008) (citing Fed. R. Civ. P. 3). The Plaintiff's objections related to these findings are overruled.

**B.  Whether the Plaintiff Has Stated a Retaliation Claim**

In order to make out a retaliation claim under Bivens, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Hines v. Graham, 320 F. Supp. 2d 511, 521 (N.D. Tex. 2004). Magistrate Judge Walker found that the Plaintiff's retaliation claims fail on elements three and four. First, he concluded that the Plaintiff had failed to allege a chronology of events from which but-for causation can be plausibly inferred. See Woods, 60 F.3d at 1166. Second, he determined that the Plaintiff failed to allege an adverse act or acts. See Johnson v. Kelly, 2007 WL 1849001, *10 (S.D. Tex. June 25, 2007) (citing Morris v. Powell, 449 F.3d 682 (5th Cir. 2006)). In an effort to overcome these findings, the Plaintiff, who lacks direct evidence of retaliation, offers his chronology events, which he suggests plausibly support the inference of retaliation, and also argues that his transfer to a different housing facility was not a *de minimus* act.

Having carefully scrutinized the Plaintiff's timeline, it does

9

not support the Plaintiff's view that he would not have been disciplined for the November 18, 2009 incident but-for his engagement in a protected activity. The Plaintiff's theory is that Smith, Taylor, and Boone "colluded" against him to deny him the lower-bunk bed which Warden Pearson had approved on November 16, 2009, because he made "several repeated requests on November 4, 2009 and November 11, 2009" for a lower bunk-bed assignment. See Objections at 30. But the Plaintiff does not clearly allege to whom he made those prior "requests,"[4] and furthermore, the Plaintiff does not allege that Boone, who was the catalyst for the incident, ever became aware of the Plaintiff's "repeated requests" or what she did to incite his anger. See Walding v. United States, 2009 WL 890265, at *12 & n.9 (W.D. Tex. Mar. 30 2009). There is evidence showing that the Plaintiff directly asked Pearson to fulfill his lower-bunk assignment on November 16, 2009, and Pearson in turn immediately instructed Larochelle to assign a lower-bunk. Larrochelle Decl. ¶ 4, docket no. 2. But the evidence does not indicate that the Plaintiff complained about anyone at this time and it is unclear whether this request was made through "formal channels." See Hanna v. Maxwell, 415 F. App'x 533, 536 (5th Cir.

---

[4] As for the requests themselves, there is no record to indicate that the requests were made through any formal channels or are otherwise entitled to First Amendment protection. Morris, 449 F.3d at 684 ("A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct.").

10

2011). In sum, the Plaintiff has not alleged facts that would indicate a plausible link between his engagement in a protected activity and the adverse act. And even if the Plaintiff could establish causation, his claim regarding the November 18, 2009 incident would fail on qualified immunity grounds for the reasons set out below.

With respect to the May 7, 2010 incident, here again, the Plaintiff points to timing to sustain his retaliation claim. The May 7, 2010 involved a dispute between the Plaintiff and Griffin, a camp administrative counselor who apparently was responsible for the job assignments at the camp. It is apparent from the record that the Plaintiff did not agree with his job assignment, believing that he should be assigned a different job for medical reasons, and filed a complaint against Griffin on April 30, 2010. See Remedy ID #, 589596, docket no. 60-1 at 73.[5] Shortly thereafter, on May 7, 2010, the Plaintiff had a run-in with Griffin after Griffin found the Plaintiff sitting in the multipurpose room during work hours. Griffin Decl. ¶ 4. When Griffin asked the Plaintiff why he was not at his work detail, the Plaintiff responded that had been given

---

[5] Plaintiff later alleged that Griffin stated that he would have him transferred to the "low facility." See Remedy ID #, 589593, docket no. 60-1 at 71. But this allegation came after the May 7, 2010, and the context for this allegation appears unclear. For instance, the Plaintiff does not allege that Griffin stated that he would have the Plaintiff placed in a low facility *because the Plaintiff had filed administrative complaints*. In other words, it is entirely plausible that Griffin was not motivated by an illicit animus when making these alleged comments.

11

permission to be in the multipurpose room. Id. Griffin investigated the story and discovered that the Plaintiff had skipped his work assignment without permission. When Griffin confronted him with this knowledge, the Plaintiff became insolent and wanted to know why his request for a job reassignment had not been granted. Id.

Unlike the situation between the Plaintiff and Boone, based upon the Plaintiff's allegations and Griffin's declaration, the Court can infer that Griffin was aware of the Plaintiff's complaints related to his failure to receive a job reassignment prior to May 7, 2010. See Id. ¶ 6. Viewing the events in a light favorable to the Plaintiff, see Smith v. Xerox Corp., 866 F.2d 135, 137 (5th Cir.1989), the Court concludes that the Plaintiff has pleaded enough facts to establish a link between his pursuit of an administrative remedy with regard to a work-assignment change and his receipt of a disciplinary charge related to the May 7, 2010 incident. The timing is close; Griffin may have been aware of the Plaintiff's administrative complaints against him; and it is therefore conceivable that Griffin's actions were motivated by a retaliatory animus.

But the facts provided by the Plaintiff do not indicate with any definiteness that he suffered an adverse act related to this incident. The Fifth Circuit has stated that "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his

constitutional rights." Morris, 449 F.3d at 686. Spending time in the SHU could easily constitute an adverse act under Fifth Circuit law.[6] E.g., Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003). But more facts are needed about the SHU and the Plaintiff's detainment therein before the Court could decide whether the Plaintiff suffered an adverse act under the person-of-ordinary-firmness standard. A ruling on this issue is not necessary because the Plaintiff did not exhaust his remedy related to this claim and because the Defendants are entitled to qualified immunity on this claim.

### C. Whether the Defendants Are Entitled to Qualified Immunity

"A qualified immunity defense 'serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law.'" Atteberry v. Nocona General Hosp., 430 F.3d 245, 253 (5th Cir. 2005) (quoting Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001)). The Court will limit its consideration to the first

---

[6] The Court notes that the Defendants' position in its summary judgment brief was that the Plaintiff only alleged loss of commissary privileges, phone privileges, and the opening of his mail as adverse acts. Moreover, the Plaintiff only suffered these acts related to other disciplinary incidents, not the May 7, 2010 incident. Magistrate Judge Walker relied on these facts to find that the adverse acts alleged by the Plaintiff were *de minimus*. To the extent that the Plaintiff objects to this determination, the Court agrees that the Plaintiff has alleged in his Complaint that he was temporarily housed in the SHU as a result of the May 7, 2010 incident.

13

step of the two-step qualified immunity test, which considers whether the Defendants' conduct violated the Plaintiff's constitutional rights. Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Defendants submitted summary-judgement-type evidence and Magistrate Judge Walker construed their dispositive Motion accordingly. See R & R at 11. In response to the Defendants' Motion, the Plaintiff has filed a Rule 56(d) Motion [docket no. 33], which is similar in function to a Schultea reply. Schultea v. Wood, 47 F.3d 1427, 1434 (5th Cir. 1995). Therefore, this Court will consider the evidence presented by the Defendants in light of any of the Plaintiff's factual allegations in his fifty-four pages of objections or his Rule 56(d) Motion that could conceivably lead to evidence sufficient to overcome the Defendants' entitlement to qualified immunity.

Notably, in his attempt to overcome the Defendants' qualified immunity defense, the Plaintiff seems to believe that his filing an administrative grievance infuses a retaliatory motive into all subsequent disciplinary actions, making pre-trial resolution on the issue of qualified immunity improper. In the Plaintiff's view, whether his behavior may have warranted a disciplinary infraction is irrelevant to the Court's anlysis of whether his constitutional rights were violated. See Objections at 47. To support his belief, he cites Woods v. Smith, in which the Fifth Circuit stated:

> We emphasize that our concern is whether there was retaliation for the exercise of a constitutional right,

14

> separate and apart from the apparent validity of the underlying disciplinary report. An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.

Woods, 60 F.3d at 1165 (emphasis added) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989); Smith v. Maschner, 899 F.2d 940 (10th Cir. 1990); Franco v. Kelly, 854 F. 2d 584 (2d Cir. 1988)). While the Plaintiff is correct that the question is ultimately retaliation *vel non*, the Fifth Circuit went on to instruct trial courts to carefully scrutinize retaliation claims in order to prevent prisoners from "inappropriately insulat[ing] themselves from disciplinary actions by drawing the shield of retaliation around them." Id. at 1166. In explaining how trial courts might scrutinize these claims, the Fifth Circuit stated that the legitimacy of the prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus. Id. at 1166. Not only that, but the court also indicated that the "number, nature, and disposition of prior retaliation complaints by the inmate" is "potent summary judgment evidence." Id.

The Plaintiff has been disciplined on numerous occasions for acts of insolence toward the BOP staff but alleges that each act resulting in disciplinary action was misconstrued, motivated, or even perhaps provoked by the Defendants, who engaged in a campaign

15

of retaliation against him for complaining about particular BOP employees or more generally availing himself to the administrative grievance process. The Defendants have each submitted evidence that they were not motivated by a retaliatory animus in connection with their involvement in the Plaintiff's disciplinary process. Larochelle Decl. ¶¶ 9-10; Pearson Decl. ¶ 7; Smith Decl. ¶ 5; Smithers Decl. ¶ 6; Morris Decl. ¶¶ 6-7; Everett ¶ 9; Pitts Decl. ¶¶ 5-6; Chisolm-Reams Decl. ¶ 8; Jackson Decl. ¶ 6; Truex Decl. ¶ 7; Chambers Decl. ¶ 7; Pittman ¶¶ 7-8. Specifically, Boone and Griffin both claim that they disciplined the Plaintiff solely because of his insolent behavior, and their factual allegations related to these events confirm their claim that they did not act with a retaliatory animus. See Boone Decl. ¶¶ 4-6; Griffin Decl. ¶¶ 4-7. Accordingly, the burden shifts back to the Plaintiff to show or *even allege* discoverable facts that would create a genuine dispute regarding whether the Defendants did indeed violate his constitutional rights. Atteberry, 430 F.3d at 253 (citing McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

The Court has combed through the Plaintiff's fifty-four pages objections for factual allegations suggesting that the November 18, 2008 or the May 7, 2010 incident did not warrant a disciplinary

16

infraction.[7] Further the Court has examined the Plaintiff's Rule 56(d) Motion [docket no. 33], Affidavit in Support [docket no. 34], and Memorandum [docket no. 35], looking for the same. With the exception of the conclusory and oft-repeated statement that the Defendants' reports "are false and unjustified," this Court has found none. See Objections at 24, 30-31, 33. If fact, in a few places the Plaintiff appears to concede that he acted insolently. See Objections at 47. Finding no evidence to undermine the legitimacy of the Plaintiff's disciplinary infractions, the Court concludes that no evidence exists from which a reasonable juror could find that any of the Defendants violated the Plaintiff's constitutional rights.[8] That is, there is no evidence to overcome the Defendants' assertion that they did not act with a retaliatory animus. Even if this were not the case, there is the additional matter of whether the Defendants' conduct was objectively reasonable as a matter of law. Atteberry, 430 F.3d at 256. Given

---

[7] The Plaintiff is under the impression that he would do better if the Court read his Complaint as a whole. See Objections at 28 (citing Bartholet v. Reishauer A.G. (Zurich)), 953 F.2d 1073 (7th Cir. 1992). Reading the Complaint as a whole, however, does the Plaintiff more harm than good. There is not one shred of direct evidence indicating that *any* of the Defendants harbored a retaliatory animus against the Plaintiff. The Plaintiff attempts to use timing again and again, and in so doing, attempts exactly what the Woods Court was wary of. Woods 60 F.3d at 1166.

[8] This finding is only bolstered by a brief look at the "number, nature, and disposition" of the Plaintiff's multiple retaliation claims, which indicate that the Plaintiff alleges retaliation in response to many disciplinary actions but has not prevailed on one claim on the merits.

that there is no evidence to suggest that the disciplinary actions were unwarranted, the Court would conclude that the Defendants' conduct was objectively reasonable. See also Johnson v. Kelly, 2007 WL 1849001, at *6 (S.D. Tex. June 25, 2007) ("A different rule would allow a prisoner openly to flout prison regulations after filing a grievance and then sue . . . arguing that prison officials disciplined him in retaliation for filing a grievance.") (citation omitted).

In sum, with respect to the Plaintiff's retaliation claims, the Court finds that they were not pleaded properly, except to the extent that he might have alleged an unexhausted retaliation claim in connection with the May 7, 2010 incident related to his temporary housing in the SHU. However, the Plaintiff cannot overcome the Defendants' qualified immunity defense related to this incident or the November 18, 2009 incident. For these reasons, the Plaintiffs objections to the Report and Recommendation are overruled.

**D. The Plaintiff's Remaining Objections**

Having addressed exhaustion and retaliation, both of which go to the heart of the Plaintiff's claims, the Court will quickly address the Plaintiff's remaining objections. With respect to the Plaintiff's conspiracy claim, the Court agrees with the Report and Recommendation that not only has the Plaintiff not pleaded the operative facts necessary for this claim to survive but also he has

not provided any evidence to support this allegation. The Plaintiff's due process claim cannot survive for similar reasons, although the Court notes that this claim, as explained in his objections, is simply a restatement of his retaliation claim based on a violation of his First Amendment rights. See Objections at 35-38. Moreover, to the extent that the Plaintiff has a due process claim that is not related to his retaliation theory, such a claim has not been exhausted. As for the Plaintiff's supervisor liability theories, which rely in part on his clever attempt to apply the cat's paw theory in the prison context, the Plaintiff's allegation fails simply because there is no evidence of retaliation. See id. at 40-46. Finally, the Court finds that Dr. Chambers was a Public Health Service officer acting in the "scope of his office or employment" in his dealings with the Plaintiff and therefore enjoys absolute immunity under 42 U.S.C. § 233. See generally, Hui v. Castaneda, 559 U.S. 799 (2010).

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the Report and Recommendation [docket no. 52] is **ADOPTED** and the Plaintiff's objections [docket no. 60] are **OVERRULED**. Accordingly, **IT IS FURTHER HEREBY ORDERED THAT** Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [**docket no. 25**] is **GRANTED** and Plaintiff's Motion to Continue Summary Judgment Motion pursuant to Rule 56(d) [**docket no. 33**] is **DENIED**. A separate order

will issue forthwith dismissing the Plaintiff's claims in his original Complaint *with prejudice* consistent with the Court's findings in this Order and the reasons set forth in the Report and Recommendation that are consistent with this Order. See supra pgs. 1-2. But the Plaintiff's claims in his Amended Complaint will be dismissed *without prejudice*, again, for the reasons set out above.

So **ORDERED,** this the 26th day of March, 2013.

                               /s/ David Bramlette
                               **UNITED STATES DISTRICT COURT**